JEAN WARREN, Plaintiff-Appellant, v. COCA-COLA BOTTLING COMPANY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 86—2276

Opinion filed February 19, 1988.

Schmidt & O'Brien, of Chicago (Philip J. Schmidt, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Thomas P. McGarry, and Kathryn A. Spalding, of counsel), for appellee Coca-Cola Bottling Company of Chicago.

Daniel J. Pope, Michael T. Trucco, and Timothy M. Kelly, all of Coffield, Ungaretti, Harris & Slavin, of Chicago, for appellee Coca-Cola Company.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Jean Warren (plaintiff) filed an action at law against defendants, Coca-Cola Bottling Company of Chicago (Bottling Company), the Coca-Cola Company (Coca-Cola) and Litt's Cut Rate, for injuries allegedly sustained from drinking a contaminated can of Coca-Cola. On July 10, 1986, the circuit court granted summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005) in favor of defendants Bottling Company and Coca-Cola on their motions.

Plaintiff appeals that order based on a finding of the trial court pursuant to Illinois Supreme Court Rule 304(a). 107 Ill. 2d R. 304(a).

The following facts are pertinent to our disposition. On August 7, 1982, plaintiff became ill after drinking from a can of Coca-Cola purchased at Litt's Cut Rate, a drug store. On July 30, 1984, plaintiff filed a nine-count complaint against defendants, Coca-Cola, Bottling Company and Litt's Cut Rate, alleging that the can of Coca-Cola plaintiff consumed was contaminated with "a dangerous amount of streptococci fecalis." The complaint directed theories based in strict liability, negligence, and breach of implied warranties against each defendant. Defendants Bottling Company and Coca-Cola each filed an-

swers denying the material allegations of the complaint.

Plaintiff was deposed on November 1, 1984, and established the following. Plaintiff, while with a friend, bought a single cold, flip-top can of Coca-Cola, taken from a cooler, at Litt's Cut Rate during the afternoon of August 7, 1982. The top of the can was clean. Before plaintiff finished paying for the Coca-Cola she opened the can, noticed it had normal carbonation, and took a "big gulp." She immediately noticed that the Coca-Cola tasted bad. Plaintiff began to feel nauseated and sick to her stomach in less than five minutes after the first drink. She then left the store with her friend, taking the can of Coca-Cola with her. Plaintiff's friend drove plaintiff to Woodlawn Hospital. At the hospital's registration desk, plaintiff became increasingly ill and went to the bathroom, where she began vomiting. Plaintiff was taken to the hospital's emergency room. Plaintiff told the doctors present that she became ill after drinking "some pop." Plaintiff was told that the cause of her illness "could be" from drinking the Coca-Cola.

Plaintiff was admitted to the hospital under the care of Dr. Nicholas Sanez. Dr. Sanez told plaintiff that her condition could have been caused by the Coca-Cola, but that an analysis of the can's contents could not be undertaken at the hospital. Throughout plaintiff's six-day hospital stay she suffered stomach cramps, diarrhea, and bouts of vomiting. The personnel at Woodlawn Hospital were never able to tell plaintiff what had caused her illness.

At all times during plaintiff's hospital stay, the can of Coca-Cola remained in plaintiff's mother's refrigerator. The top of the can was covered by tin foil, fastened with a rubber band. Plaintiff's mother had previously retrieved the can from plaintiff's friend's car on the evening that plaintiff was admitted to the hospital.

Following release from the hospital plaintiff took the can, by bus, to the Chicago Board of Health to be analyzed. The test results indicated the Coca-Cola contained 1,300 organisms of streptococci fecalis per gram. Plaintiff showed the results to Dr. Sanez, who told plaintiff that her illness "could have" been caused by the bacteria and that the bacteria's presence "wasn't normal." Plaintiff did not show the test results to any other doctor.

Natalie Humaniak, a bacteriologist with the Chicago Board of Health for 15 years, was deposed on March 26, 1985, and established the following. She performed a battery of routine tests on the contents of the can. The tests have two purposes: to indicate sanitary problems and to identify specific pathogens, bacteria which cause food poisoning. Humaniak performed the following tests: a standard plate-

count test and a streptococci fecalis test for fecal contamination, which tests both indicate the sanitary condition of the sample but do not identify specific pathogens, and three other tests for pathogens: a salmonella test, a staphylococci test, and a bacillus cereus test. Humaniak noted that streptococci fecalis bacteria can also be pathogenic in very high numbers.

The salmonella, staphylococci, and bacillus cereus tests were all negative. The plate-count test indicated that the Coca-Cola sample was insanitary, but not necessarily pathogenic. Normally, Humaniak noted, Coca-Cola would be "sterile" but she would expect that a can left open for six days would become insanitary. The test for streptococci fecalis indicated that the sample contained 1,300 organisms per gram of the bacteria. The number of organisms per gram is an estimation based on an actual count of streptococci fecalis organisms found in the test. The presence of 1,300 organisms per gram is not pathogenic, but indicates an insanitary condition of the sample. Humaniak could not be exact, but stated that, in her opinion, the amount of streptococci fecalis necessary to cause food poisoning in humans would have to be "in the hundreds of thousands or close to a million." Humaniak further stated that the streptococci fecalis test only indicates the presence of bacteria at the time the test is performed. The number of organisms could have been greater at some point prior to testing. The streptococci bacteria can only cause illness by releasing a toxin once ingested; the organisms do not multiply once inside the human body.

On December 12, 1985, defendant Bottling Company moved for summary judgment on the ground that no issue of material fact existed to show that plaintiff's condition was caused by "a dangerous amount of streptococci fecalis," as alleged in the complaint, or any other defect or unreasonably dangerous condition. In support of the motion, defendant attached relevant portions of the deposition testimony of both Humaniak and plaintiff. Defendant also attached an attending physician's report which recites, in legible portion, plaintiff's own description of the occurrence as "nausea and vomiting after drinking a can of Coca-Cola" and contains the "diagnosis" "acute gastritis." The report also contains a checkmark in the box denoted "yes" as to whether the patient's condition was solely a result of the "accident."

Plaintiff filed a response relying upon Humaniak's statements that the Coca-Cola was insanitary because of the presence of the estimated amount of streptococci fecalis and the causal connection of the contamination to plaintiff's illness, as established by the attending physi-

cian's report. Plaintiff also submitted the affidavit of a Dr. George Farah. The trial court, on defendant Bottling Company's motion, struck the affidavit. Plaintiff has not appealed that ruling.

On March 5, 1986, defendant Coca-Cola filed its motion for summary judgment on similar grounds advanced by defendant Bottling Company, and on the additional showing that the syrup manufactured by defendant Coca-Cola was not contaminated when it left the company's control. Defendant Coca-Cola attached two affidavits in support. The affidavit of Robert L. Callahan, a vice-president of Coca-Cola, established that the Coca-Cola Company owns the Coca-Cola trademark, and is responsible only for manufacturing and selling the syrup from which the beverage is ultimately produced and bottled by independent companies throughout the United States. The affidavit of L. G. Cunningham, vice-president of quality assurance for Coca-Cola USA, established that the syrup is manufactured in a completely closed system in which materials, received in sealed containers, are transferred directly to closed tanks, where they are stored until transfer to a mixing vessel. The final form of the syrup is strained through a stainless steel mesh with openings of 0.004 of an inch. A laboratory analysis of the strained syrup is made, and the product is then packaged into thoroughly cleaned and inspected containers for shipment to bottlers.

Following a hearing on July 10, 1986, the trial court granted summary judgment in favor of defendants Coca-Cola and the Bottling Company. No judgment was rendered as to Litt's Cut Rate.

Plaintiff filed a timely notice of appeal.

The only issue presented for review is whether a genuine issue of fact exists to support plaintiff's allegations that her injury was caused by a "dangerous amount of streptococci fecalis" at the time the Coca-Cola was consumed.

OPINION

■ Upon review of the trial court's decision granting summary judgment, our only function is to determine, after considering all grounds urged and facts revealed below, whether a genuine issue of material fact remained to be determined by a jury and whether movants were entitled to summary judgment as a matter of law. (*United Security Insurance Co. v. Mason* (1978), 59 Ill. App. 3d 982, 376 N.E.2d 653.) The order of the court below will not be disturbed if the pleadings, depositions, and affidavits on file reveal that no such factual issue exists. *Fishel v. Givens* (1977), 47 Ill. App. 3d 512, 362 N.E.2d 97.

■ We note at the outset that while plaintiff was not required to

prove a *prima facie* case below in order to withstand defendants' motions for summary judgment, plaintiff was required to present some facts to support the elements of her claim. (*Technical Representatives, Inc. v. Richardson-Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 438 N.E.2d 599.) This requirement that a plaintiff prove the essential elements of her case on nonspeculative evidence has been long recognized in foodstuff cases. (*Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 392 N.E.2d 663.) In practical language, plaintiff had the burden to set forth, as to any of the theories of recovery alleged in her complaint, sufficient facts from which it is reasonable to draw the inference that the Coca-Cola was contaminated at the time plaintiff consumed it, plaintiff's illness was the direct result of the contamination, and the defendants were responsible for the Coca-Cola's contaminated condition. *Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 468 N.E.2d 422; *Golden v. Marshall Field & Co.* (1985), 134 Ill. App. 3d 100, 479 N.E.2d 1211.

■ On appeal, plaintiff argues the requisite issues of fact are sufficiently raised based on plaintiff's deposition testimony regarding the bad taste of the Coca-Cola and because plaintiff immediately became sick and nauseated following her first drink. Plaintiff states the emergency room's attending physician's report, which indicates plaintiff's condition as "acute gastritis" caused by ingestion of the Coca-Cola, also substantiates an issue of fact as to proximate cause.

Where an article of food or drink, intended for human consumption, is sold in a sealed container, an implied warranty is imposed on the manufacturer that the article was fit for that purpose, enabling a consumer to recover from the warranty's breach. (*Patargias v. Coca-Cola Bottling Co.* (1947), 332 Ill. App. 117, 74 N.E.2d 162.) The theory of strict products liability is also available to a plaintiff where a "defect" exists in the goods produced. (*Malawy v. Richards Manufacturing Co.* (1986), 150 Ill. App. 3d 549, 501 N.E.2d 376.) It is axiomatic that to recover under either theory, the injured party must prove that the condition of the product, when it left the manufacturer's control, was the same as immediately prior to its consumption. In addition to the theories of breach of implied warranty and strict liability, an injured party may establish liability against a manufacturer of a sealed food product on the basis of negligence, since the law imposes upon a manufacturer a duty to adequately prepare, inspect, and package the product produced. (*Haynes v. Coca-Cola Bottling Co.* (1976), 39 Ill. App. 3d 39, 350 N.E.2d 20.) However, the mere fact that injury occurs in consumption of the product does not alone raise a presumption, or otherwise create an inference, under any of the

above theories, entitling the consumer to recover against the manufacturer. *Tiffin v. Great Atlantic & Pacific Tea Co.* (1959), 18 Ill. 2d 48, 162 N.E.2d 406; *Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 392 N.E.2d 663.

In the case at bar, plaintiff presented no evidence in the form of counteraffidavit, or otherwise, to contradict the affidavit of L. G. Cunningham, which described the closed system in which the syrup is manufactured by defendant Coca-Cola, from which the court could infer that any bacteria was present in the syrup when it left the control of the company for bottling. Plaintiff, similarly, presented no evidence, in any form, that the contaminated condition existed at the time the can left defendant Bottling Company's control, or that the Bottling Company was otherwise responsible for the presence of any bacteria at such time. Therefore, because plaintiff has failed to provide any evidence by which the court could infer that the Coca-Cola was contaminated with bacteria when it left the control of either defendant, plaintiff has failed to adequately set forth evidentiary facts sufficient to establish the necessary elements in order to recover under either a theory of strict liability, or breach of implied warranty.

■■ ■ Moreover, plaintiff has provided neither direct nor circumstantial evidence that her illness was caused by any contamination in the can. In her deposition, plaintiff stated that, upon her first drink from the can of Coca-Cola, plaintiff began to feel ill. It is well settled that plaintiff's own speculation is insufficient to establish the necessary inference of causation in order to provide a basis for recovery, and must be discounted as surmise and conjecture. (*Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95, 468 N.E.2d 477.) Further, Humaniak's own deposition established only that it was *possible* that the amount of the bacteria present, 1,300 organisms per gram, could have caused plaintiff to become ill. The mere possibility of a causal connection is insufficient to raise the requisite inference of fact. (*Shaw v. Swift & Co.* (1953), 351 Ill. App. 135, 114 N.E.2d 330.) Lastly, for reasons discussed further below, neither the statements of Dr. Sanez, nor the attending physician's report, create an issue of fact as to proximate cause.

■ Plaintiff argues that the instant case is analogous to *Haynes v. Coca-Cola Bottling Co.* (1976), 39 Ill. App. 3d 39, 350 N.E.2d 20. In *Haynes*, an action based on negligence and breach of an implied warranty, plaintiff was awarded a jury verdict after she became ill following opening and drinking from a can of Coca-Cola which contained solid matter consisting of a mixture of paper and fungus. At trial, plaintiff's expert, a physician, testified that, based upon his observa-

tions and laboratory tests, plaintiff's nausea was directly attributable to a psychological reaction from unexpectedly imbibing foreign matter in what was thought to be a clear fluid. The court noted that, while the cause of the fungus could have entered the can after it was opened, the paper could not have. Therefore, the court determined that the case was similar to others (such as *Patargias v. Coca-Cola Bottling Co.* (1947), 332 Ill. App. 117, 74 N.E.2d 162, and *Harris v. Coca-Cola Bottling Co.* (1962), 35 Ill. App. 2d 406, 183 N.E.2d 56) in which plaintiffs became ill after drinking from sealed containers found to contain rodents or other vermin.

Plaintiff's reliance on *Haynes* is misplaced. In the instant case, no such conclusive proof of the presence of the streptococci fecalis bacteria, at the time plaintiff drank the beverage, is evident from the record. The only statements pertaining to the presence of the bacteria in the can are found in the disposition testimony of Ms. Humaniak. Humaniak stated that, although laboratory tests indicated contamination, the tests can only reveal the amount of the bacteria *at the time the test was conducted.* However, six days had elapsed from the time plaintiff's mother retrieved the uncovered can from plaintiff's friend's car, covered the opened can, and stored it in her refrigerator. Humaniak stated that the insanitary condition of the can would not be unexpected after such time. Therefore, plaintiff has failed to set forth sufficient evidentiary facts to establish the presence of the bacteria at the time of consumption.

■ Further, unlike the plaintiff in *Haynes*, plaintiff in the case at bar has also failed to provide sufficient evidence from which we could draw the inference that plaintiff's illness was directly attributable to the condition of the Coca-Cola. Humaniak stated that, in her opinion, a far greater number of the organisms than those found would have to be present to cause food poisoning. Plaintiff has offered no additional facts such that we could conclude that the presence of the amount of the bacteria found, while not enough to cause food poisoning, could nevertheless account for plaintiff's illness.

■ Finally, plaintiff would have the court infer an issue of fact based on the statements of Dr. Sanez, as recited in plaintiff's deposition, and the attending physician's report. We note that because we determine neither item creates an issue of fact, we are not compelled to entertain any argument raised by defendants that either constitutes inadmissable hearsay.

First, the statements of Dr. Sanez fail to supply more than the same speculative possibility provided in Humaniak's deposition as to the cause of plaintiff's illness. Even taken at their worth, the state-

ments of Dr. Sanez establish only the bare possibility that plaintiff's illness was attributable directly to the Coca-Cola. Second, the "diagnosis," recorded in the attending physician's report, is based entirely on plaintiff's own statements of the history of the occurrence. Further, the record contains nothing to suggest that the attending physician's checkmark, identifying the "accident" as the sole cause of plaintiff's condition, was anything other than a recitation of what plaintiff told the doctor. As such, neither item contributes any additional evidence to that already relied on by plaintiff.

We therefore find that plaintiff has failed to carry her burden to produce sufficient evidence such as would raise an issue of fact to preclude summary judgment in defendants' favor. By reason of the foregoing, the decision of the trial court is affirmed.

Affirmed.

PINCHAM and MURRAY, JJ., concur.