N.W., Plaintiff-Appellant, v. AMALGAMATED TRUST AND SAVINGS BANK *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—0662

Opinion filed April 18, 1990.

Donald A. Kurasch, Ltd., of Chicago, for appellant.

O'Connor, Schiff & Myers, of Chicago, for appellees.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

The plaintiff, N.W., was a tenant living in an apartment building located at 7379 North Damen in Chicago. She brought an action for damages against the owners and manager of the building, claiming that the defendants were negligent and that such negligence was the proximate cause of a sexual assault upon her by an unknown intruder.

The trial court granted the defendants' motion for summary judgment, and the plaintiff appeals.

At approximately 12:30 a.m. on August 1, 1983, an unknown intruder gained entrance into the plaintiff's apartment and found her asleep in her bedroom. The intruder repeatedly raped her and forced her to perform fellatio. In her third amended complaint, the plaintiff alleges that prior to entering into a lease with the defendants, she specifically pointed out to defendants her status as a single woman living alone and expressed her concern for her safety from criminal activity. The plaintiff further alleges that the defendants promised her that the doors to the front and rear entrances were locked at all times and were always kept in good repair for the purpose of keeping intruders out of the premises, and that in reliance upon these promises she entered into a lease agreement with the defendants. The plaintiff asserts that the defendants assumed a duty to prevent intruders from gaining access into the common areas of the building and that defendants were under a duty to maintain the common areas of the building in a reasonably safe condition. The complaint charges, *inter alia*, that the defendants knew or should have known that the lock to the rear entrance door was broken, and that the defendants failed to repair the broken lock and negligently maintained the premises. Finally, the plaintiff alleges that the defendants' negligent acts and omissions were the proximate cause of her physical and emotional injuries.

The plaintiff first entered into a lease with the defendants for a one-bedroom apartment on the third floor in September of 1979. The plaintiff answered an advertisement in the Chicago Sun-Times and was instructed by Parliament Enterprises (Parliament) to make an appointment with a Mr. Lorello, the building janitor. Lorello gave the plaintiff a tour of the premises and showed her two apartments. The building is U-shaped with a courtyard and is divided into sections, each with its own front entrance. The door to the front entrance is equipped with an automatic lock which requires a key for entry. There is also a rear entrance in the plaintiff's section facing an alley behind the building. The door to the rear entrance is also equipped with a deadbolt lock requiring a key for entry.

The apartment that the plaintiff eventually leased has a back door in the kitchen with an automatic lock and a chain. The back door leads to an enclosed stairway, and at the base of the stairway is the door to the rear entrance facing the alley. The door to the rear entrance also leads to a gangway running alongside the building which has locked doors at both ends. Tenants living in the plaintiff's section

of the building possess keys for the door to the rear entrance. When shown the apartment, she expressed dissatisfaction with the lock on her kitchen door. Lorello assured her the kitchen door was secure because there was no way that unauthorized persons could get inside through the rear entrance. He told the plaintiff that the doors were always locked and that the locks were always kept in working condition. Lorello further added that he was in charge of maintenance and that his position at the building was his only employment. The plaintiff subsequently talked to the previous tenant, who told her that she had liked the apartment and that she had never had any problems with her personal safety.

Some three weeks prior to the attack, the plaintiff discovered the rear entrance door wide open. Upon closer inspection, she observed that the lock was broken and that the door remained ajar two or three inches after attempting to close it. The plaintiff stated that she notified employees of Parliament of the broken lock on at least six or seven occasions. The plaintiff also learned from her neighbors across the hall that the lock on the rear door had been broken longer than she thought and that they too had complained to Parliament. The plaintiff further stated that she spoke with the janitor, Terry Merkin, who had replaced Lorello a year and a half earlier, on a daily basis regarding the lock.

According to the plaintiff, the police were of the opinion that the assailant entered the building through the rear entrance and used a credit card and a tool to open her kitchen door. The plaintiff concedes, however, that tenants in her section have free access to the stairwell leading up to her kitchen door. She never saw the intruder enter her apartment nor did she observe how he left. The plaintiff admits she is unable to exclude other tenants or their guests as possible suspects. The plaintiff further stated in her deposition that during the years she resided at the defendants' building, she was unaware of any criminal acts committed in the building.

■ Summary judgment may be granted when the pleadings, depositions, admissions and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) A motion for summary judgment and its supporting documents must be construed strictly against the moving party and liberally in favor of the opponent. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 214, 531 N.E.2d 1358.) Summary judgment is a drastic method of disposing of cases and should be granted only when the movant's right is clear and free from doubt. *Rowe*, 125 Ill. 2d at 215.

■■ ■ In an action for negligence, a plaintiff must set out facts establishing the existence of a duty of care, a breach of that duty, and an injury proximately resulting from that breach. (*Rowe*, 125 Ill. 2d at 215.) In their motion for summary judgment, defendants dispute the existence of the elements of duty and proximate cause. The basic test for determining whether a duty exists is foreseeability, as the law imposes a duty to exercise ordinary care to guard against injuries which may naturally flow as a reasonably probable and foreseeable consequence of one's act. (*Mims v. New York Life Insurance Co.* (1971), 133 Ill. App. 2d 283, 285, 273 N.E.2d 186.) The determination of whether to impose a duty also requires consideration of the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. (*Trice v. Chicago Housing Authority* (1973), 14 Ill. App. 3d 97, 100, 302 N.E.2d 207.) Whether a duty exists is a question of law for the court. *Morgan v. Dalton Management Co.* (1983), 117 Ill. App. 3d 815, 818, 454 N.E.2d 57.

■■ ■ As a general rule, there is no duty to protect others against the criminal attacks of third persons absent a special relationship. (*Gill v. Chicago Park District* (1980), 85 Ill. App. 3d 903, 905, 407 N.E.2d 671; Restatement (Second) of Torts §315 (1965).) Where the parties stand in a special relationship, such as business invitor and invitee or innkeeper and guest, there exists a duty to protect against reasonably foreseeable criminal activity. (*Rowe*, 125 Ill. 2d at 215-16.) On numerous occasions, however, our supreme court has refused to confer this special status upon the landlord-tenant relationship. (*Rowe*, 125 Ill. 2d at 216.) Thus, in Illinois there is no general duty imposed upon landlords to protect tenants from criminal activity. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 208, 399 N.E.2d 596. See also *Morgan v. Dalton Management Co.* (1983), 117 Ill. App. 3d 815, 454 N.E.2d 57; *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 344 N.E.2d 536; *Trice v. Chicago Housing Authority* (1973), 14 Ill. App. 3d 93, 302 N.E.2d 207.) As with most general rules, however, there are exceptions. The plaintiff contends that the defendants assumed a duty to protect her under the voluntary undertaking rule or, in the alternative, that liability may be predicated on the defendants' violation of their common law duty to maintain the common areas of the building in a reasonably safe condition.

■ In *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, our supreme court held that liability may attach where a landlord voluntarily undertakes to provide security measures, but performs the undertaking negligently. In that case, the court held

that the Chicago Housing Authority (CHA) engaged in a voluntary undertaking when it contracted with a security agency to provide protective services for tenants and social guests. The court added that the duty assumed by the CHA was limited to the extent of its undertaking and that the CHA could therefore be liable at most for negligent hiring. The holding in *Pippin*, which relied upon an earlier decision in *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74, 199 N.E.2d 769, rests upon the principle stated in section 323(1) of the first Restatement. (Accord *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 127, 431 N.E.2d 1038; *Figueroa v. Evangelical Covenant Church* (7th Cir. 1989), 879 F.2d 1427, 1435.) That section provides:

> "One who gratuitously renders services to another *** is subject to liability for bodily harm caused to the other by his failure, while so doing, to exercise *** such competence and skill as he possesses." (Restatement of Torts §323(1) (1934), quoted in *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74.)

This principle was applied again by the supreme court in *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1138. In *Phillips*, the plaintiff's decedent was thrown out a window after being sexually assaulted by an unknown person or persons. The complaint alleged that the CHA undertook to close off and secure certain floors to prevent access by criminals. The complaint then alleged further that the CHA performed the undertaking negligently by, *inter alia*, leaving keys to the closed-off floors and keys to elevators traveling to the closed-off floors in an area accessible to the public and by failing to inspect the doors to determine if the locks were working properly. The trial court dismissed the case for failure to state a cause of action, and the appellate court reversed. The supreme court affirmed the decision of the appellate court, holding that the complaint properly alleged a voluntary undertaking by the CHA to close off and secure certain floors in order to provide protection for the tenants. (*Phillips*, 89 Ill. 2d at 127.) Thus, a voluntary undertaking to protect tenants from criminal activity can be found where a landlord takes measures to prevent access by unauthorized persons.

■ The plaintiff argues on appeal that the defendants assumed a duty to protect her from criminal activity when the defendants promised to keep the door locks in working condition. Before addressing this contention, we note that section 323(1) of the Restatement covers injury caused by a negligent performance of a voluntary undertaking as opposed to a failure to act or nonfeasance. Liability for an omission to perform a voluntary undertaking is covered in section 325 of the

first Restatement. To establish liability under section 325, a plaintiff must show: (1) a promise by the defendant to do an act or to render a service; (2) reliance upon the defendant's promise; and (3) injury which was a proximate result of the defendant's omission to perform the voluntary undertaking. (Restatement of Torts §325 (1934).) While reliance is not required where a negligent performance of a voluntary undertaking is alleged (*Figueroa v. Evangelical Covenant Church*, 879 F.2d at 1435), such reliance is required when a plaintiff wants to hold a defendant liable for an omission to perform an undertaking. (*Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d at 85-86; Restatement of Torts §325 (1934).) Because the plaintiff's complaint charges the defendants with a failure to maintain and repair the door lock to the rear entrance as they had promised, the present case falls under section 325.[1]

The plaintiff has made a sufficient showing of reliance. There was a promise by the landlord to maintain the locks in proper working condition at all times to prevent entry by unauthorized persons. This promise induced the plaintiff to sign a lease with the defendants. Further, there were repeated assurances by the building management that repair would be effected, thereby inducing the plaintiff to remain in her apartment and forego the opportunity to take safety precautions of her own. The question remains, however, whether the defend-

---

[1]Sections 323 and 325 of the first Restatement were collapsed into a single section in the Restatement (Second). Section 323 now reads:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking." (Restatement (Second) of Torts §323 (1965).)

We cite to the first Restatement, however, because later decisions have interpreted the supreme court's holding in *Pippin* to be based on the first Restatement. (See *Figueroa v. Evangelical Covenant Church* (7th Cir. 1989), 879 F.2d 1427, 1435; *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 127-28, 431 N.E.2d 1138.) Although our analysis in this case would not differ under the Restatement (Second), we nevertheless refer to the first Restatement for the sake of clarity and consistency. We call attention to the supreme court's decision in *Phillips* refusing to require a showing of an "increase in [risk]" in order to impose liability under the voluntary undertaking rule. (*Phillips*, 89 Ill. 2d at 127.) On the other hand, the Restatement (Second) does come into play where one party voluntarily undertakes to perform an act or service for another party and a third person is injured by the first party's negligence. See *Pippin*, 78 Ill. 2d at 210; Restatement (Second) of Torts §324A (1965).

ants' promise to keep the door locks in good repair at all times constitutes a voluntary undertaking to protect the plaintiff from criminal acts of third persons.

■ This identical contention was advanced in *Rowe v. State Bank*, but was left unresolved as there was nothing in the record to substantiate the claim that the landlord ever covenanted to keep the door locks in repair or that the door locks were not functioning properly on the night of the criminal attack. (*Rowe*, 125 Ill. 2d at 218-19.) The court did state, however, in regard to illumination provided by the landlord in the common areas, that the furnishing of lighting in facilities of the type involved in *Rowe* is commonplace and furnished by virtually every landlord and, therefore, the provision of lighting in the common areas could not be regarded as an assumption of a duty to protect against criminal acts. (*Rowe*, 125 Ill. 2d at 218.) We consider that door locks are also commonplace and furnished by virtually every landlord. Therefore, we conclude that a promise to maintain door locks in working condition does not rise to a voluntary undertaking to protect tenants from criminal activity. See also *Rabel v. Illinois Wesleyan University* (1987), 161 Ill. App. 3d 348, 363, 514 N.E.2d 552; *Carrigan v. New World Enterprises, Ltd.* (1983), 112 Ill. App. 3d 970, 977-78, 446 N.E.2d 265.

■ The plaintiff also contends that the defendants breached their common law duty to maintain the rear entrance in a reasonably safe condition and that the failure to repair the rear entrance after repeated warnings proximately caused her injuries. The landlord's duty to keep the common areas of the building in a reasonably safe condition is customarily regarded as an obligation to maintain and repair, not to police. (*Trice*, 14 Ill. App. 3d at 100.) It has been recognized in Illinois, however, that a landlord may also be liable to a tenant for injuries sustained in a criminal assault if a condition of the premises facilitated the criminal activity. (*Rowe*, 125 Ill. 2d at 224; *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433; *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47.) These decisions do not really create an exception to the general rule, as liability is not derived from any duty to guard against the criminal acts of third persons. Rather, they merely represent application of basic principles of proximate cause where the landlord breaches his duty to maintain the common areas of the building in a reasonably safe condition. (*Rowe*, 125 Ill. 2d at 224; *Duncavage*, 147 Ill. App. 3d at 96-97.) In *Duncavage* for example, a tenant was raped and killed by an assailant who had gained entrance into the decedent's apartment through a window by climbing a ladder which the landlord stored in the adjacent

yard. The complaint alleged that the window was incapable of being locked and that the same ladder had been used on a previous occasion to enter the same window to burglarize the same apartment. Citing *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 80, 117 N.E.2d 74, the court explained that while a criminal act may be an intervening event, the causal chain is not broken by the intervention of such an act if the criminal act was itself reasonably foreseeable at the time of the original wrongdoer's negligence. (*Duncavage*, 147 Ill. App. 3d at 97.) The key to establishing liability is to show that the intervening criminal act was a reasonably foreseeable event at the time of the landlord's failure to maintain the premises. See also *Stribling*, 34 Ill. App. 3d 551.

▆▆ The plaintiff, however, has failed to present any evidence showing that criminal activity was reasonably foreseeable. There are no affidavits or other documentation showing previous occurrences of criminal activity (*Applebaum v. Jewel Cos.* (1979), 76 Ill. App. 3d 346, 348, 395 N.E.2d 57; *Mrzlak v. Ettinger* (1975), 25 Ill. App. 3d 706, 709-10, 323 N.E.2d 796; *O'Brien v. Colonial Village, Inc.* (1970), 119 Ill. App. 2d 105, 108, 255 N.E.2d 205) or special conditions showing that a criminal act was likely to result. (*Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 379, 50 N.E. 497.) The defendants point to the plaintiff's deposition for evidentiary facts showing that foreseeability is absent. Plaintiff stated that prior to signing her lease she questioned the previous tenant regarding her safety from criminal activity. The previous tenant responded that she had not been aware of any problems during her tenancy. The plaintiff further stated that she found the apartment desirable because the neighborhood was clean and quiet. Moreover, plaintiff herself admitted that during the period she resided at defendants' building, she was not aware of any problems in the neighborhood up until the night of the incident.

▆▆ Although a plaintiff opposing a motion for summary judgment does not have to prove her case, she must, if defendant precludes any possible liability through supporting documents, present some factual basis that would arguably entitle her to judgment. (*Martin v. 1727 Corp.* (1983), 120 Ill. App. 3d 733, 737, 458 N.E.2d 990; *Cohen v. Washington Manufacturing Co.* (1979), 80 Ill. App. 3d 1, 3, 398 N.E.2d 1202.) A motion for summary judgment asks whether the nonmovant has presented any evidence to raise a genuine issue of material fact. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1056, 473 N.E.2d 444.) "Genuine" has been construed to mean that there is evidence to support the position of the nonmoving party. (*Ralston*, 129 Ill. App. 3d at 1058.) Where documents supporting a motion for sum-

mary judgment present evidentiary facts contrary to the allegations in the complaint, the plaintiff cannot rely upon the complaint alone to raise an issue of fact. (*Lawrence v. Rubio* (1980), 85 Ill. App. 3d 472, 476-77, 406 N.E.2d 195.) There is nothing in the record to show that the plaintiff needed additional time for discovery (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 819-20, 416 N.E.2d 328; *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 979, 382 N.E.2d 36), and plaintiff cannot defeat a summary judgment by asserting that evidence would be forthcoming in the future. (*Kimbrough*, 92 Ill. App. 3d at 814.) Therefore, the court concludes that the criminal act was unforeseeable and constitutes a superseding cause of plaintiff's injuries.

■■■ Assuming for the moment that the criminal act was reasonably foreseeable or that the defendants had in fact engaged in a voluntary undertaking to protect N.W. from criminal activity, the defendants also contend that the plaintiff cannot establish proximate cause. Proximate cause exists when the injury is "the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence." (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 111, 382 N.E.2d 1205.) It is not necessary that the precise injury which resulted have been foreseen. (*Greene*, 73 Ill. 2d at 111.) Ordinarily, the question of proximate cause is a question of fact. (*Salinas v. Werton* (1987), 161 Ill. App. 3d 510, 515, 515 N.E.2d 142.) Where, however, the material facts are undisputed and reasonable men would not disagree as to the inferences to be drawn from them, proximate cause becomes a question of law. (*Salinas*, 161 Ill. App. 3d at 515.) If, upon all the evidence contained in the record, nothing would be left to go to the jury, and the court would be required to direct a verdict, summary judgment is appropriate. *Palumbo v. Frank's Nursery & Crafts, Inc.* (1989), 182 Ill. App. 3d 283, 288, 537 N.E.2d 1073.

■■ The defendants contend that the method by which the assailant gained access to the plaintiff's kitchen door can be determined only by engaging in speculation, surmise, and conjecture. Defendants rely upon the well-settled rule that liability cannot be predicated upon surmise or conjecture as to the cause of the injury. (*Palumbo*, 182 Ill. App. 3d at 288; *Salinas*, 161 Ill. App. 3d at 514.) Proximate cause can only be established when there is a reasonable certainty that the defendants' acts caused the injury. (*McCormick v. Maplehurst Winter Sports, Ltd.* (1988), 166 Ill. App. 3d 93, 98, 519 N.E.2d 469; *Salinas*, 161 Ill. App. 3d at 514.) The defendants maintain that there is no evi-

dence that the assailant was not a tenant or a social guest who would have had access to the plaintiff's kitchen door irrespective of whether the rear entrance was locked. The defendants further note that only evidentiary facts may be considered on a motion for summary judgment and, therefore, the statements made by the police to the plaintiff as related to us in her deposition must be ignored. Evidence which is inadmissible at trial is not admissible for purposes of summary judgment. (*E.g.*, *Fearon v. Mobil Joliet Refining Corp.* (1985), 131 Ill. App. 3d 1, 8, 475 N.E.2d 549.) The defendants also point out that no one, including the plaintiff, observed the assailant enter or leave the apartment. The defendants assert, therefore, that there is not enough evidence to raise an issue of fact for proximate cause. We agree.

The only piece of evidence supporting the plaintiff on the issue of proximate cause is the fact that the lock was inoperable on the night of the attack and, hence, a mode of access to plaintiff's apartment was available. From this the plaintiff infers that the assailant entered the building through the unlocked rear entrance. Such an inference would be quite reasonable but for the fact that access to the plaintiff's kitchen door was also available to other tenants and their social guests. A mere possibility of a causal connection is insufficient to raise the requisite inference of fact. *Warren v. Coca-Cola Bottling Co.* (1988), 166 Ill. App. 3d 566, 573, 519 N.E.2d 1197; *Monaghan v. DiPaulo Construction Co.* (1986), 140 Ill. App. 3d 921, 925, 489 N.E.2d 409; *Carrigan v. New World Enterprises, Ltd.*, 112 Ill. App. 3d at 978.

The plaintiff also asserts that the defendants are in violation of the Chicago Municipal Code. A violation of a statute or ordinance designed for the protection of life or property is *prima facie* evidence of negligence. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390, 356 N.E.2d 93.) The plaintiff has, however, failed to plead any such violations, and points not raised in the complaint or passed on by the trial court cannot be presented for the first time on appeal. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147, 342 N.E.2d 417; *Galayda v. Penman* (1980), 80 Ill. App. 3d 423, 429, 399 N.E.2d 656.

For the foregoing reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

FREEMAN and WHITE, JJ., concur.