(No. 91-CC-3133–

JAMES W. LANCE III and DEBBIE D. LANCE, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 14, 1999.*

RIPPLINGER, DIXON & JOHNSTON (GEORGE R. RIP- PLINGER, of counsel), for Claimants.

JIM E. RYAN, Attorney General (PHILLIP MCQUILLAN, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

The Claimants, James W. Lance III and Debbie Lance, bring this action for compensatory damages pursuant to the Illinois Court of Claims Act, 705 ILCS 505/8. Claimant, James W. Lance III (James Lance), asserts that he was injured as a direct and proximate result of negligence committed by agents of the State of Illinois in maintaining an area of pavement along and upon Illinois Route 13 at or near its intersection with Pinckneyville Road near Marissa, Illinois. The Claimant further asserts that the State of Illinois was negligent by erecting a guardrail at the same location so as to constitute a danger to anyone leaving the pavement and striking the guardrail. Claimant, Debbie D. Lance (Debbie Lance) asserts that as a result of the negligence of the State of Illinois in maintaining the pavement and erecting the guardrail, she suffered a loss of consortium and she has become responsible for the medical expenses of her then husband, James Lance.

### Statement of Facts

At some time between 10:30 p.m. and 11:20 p.m. on April 17, 1989, Claimant James Lance was operating his Yamaha Maxim 650 motorcycle on Illinois Route 13 in a southerly direction at or near Pinckneyville Road, City of Marissa, County of St. Clair, Illinois. James Lance alleges that as he approached the intersection, he was traveling about 40 m.p.h. and struck a pothole that was located at the edge of the lane of traffic. James Lance then struck a

metal guardrail and was thrown over the motorcycle handlebars and landed approximately 30 feet from the guardrail. James Lance's motorcycle remained upright after the impact, wedged in the bent guardrail.

A hearing was held before Commissioner Clark on June 9, 1998. At this hearing, the Commissioner heard testimony from Mark Ezra, a mechanical engineer who testified as an expert witness for the Claimants regarding the nature of the alleged potholes and location of the guardrail in causing the injuries to James Lance. Also testifying were the Claimants, James Lance and Debbie Lance. The Commissioner entered into evidence the deposition of Dr. Dale H. Rosenberg, Dr. Rosenberg's curriculum vitae, deposition of Dr. Henry Hurd, Dr. Hurd's curriculum vitae, photographs of the alleged potholes and guardrail, police report of the accident for limited purposes, medical bills for James Lance, and a sketch of the accident scene for limited purposes. A departmental report from the Illinois Department of Transportation was filed.

Mark Ezra testified that James Lance struck a pothole causing him to leave the roadway. According to Mr. Ezra, James Lance should have been able to stop the motorcycle and keep it under control without further incident or injury, had it not been for striking the guardrail. Mr. Ezra opined that the guardrail was improperly located in that it was placed perpendicular to the intersection. Mr. Ezra opined that the guardrail should have been placed parallel to the roadway to minimize damages to vehicles and motorcycles leaving the roadway, and that if the guardrail had been parallel to the road, Mr. Lance's injuries would have been greatly reduced. Upon cross-examination, Mr. Ezra admitted he is not a civil engineer, and he based his conclusions on the laws of physics. Also,

Mr. Ezra admitted that he could not cite a standard that exists in any rule, law or statute, that calls for a guardrail to be placed parallel to the area where vehicles may leave the roadway. Further, Mr. Ezra relied upon photographs given to him by Claimants, and the record only indicates that the photographs were taken shortly after the accident. Mr. Ezra did not opine the age of the alleged pothole, nor did he visit the accident site.

James Lance testified that on April 17, 1989, he traveled from work to the babysitter's house where his young son was being cared for. While traveling from the babysitter's house to his house, Mr. Lance stated he was traveling about 40 m.p.h., when he hit a "crater" along and upon Illinois Route 13 at or near its intersection with Pinckneyville Road near Marissa, Illinois. After hitting the crater, Mr. Lance testified he remained upright and struck a guardrail, projecting him over the motorcycle's handlebars approximately 30 feet from the guardrail. Mr. Lance further testified as to his injuries as a result of the accident. Mr. Lance was unable to work for over four years and returned to full employment in the summer of 1993. His medical bills totaled $99,409. Upon cross-examination, Mr. Lance admitted that he drove the stretch of road where the accident occurred daily and had traveled the location more than 500 times. Upon objection from Claimant's attorney, Mr. Lance admitted that he had consumed several beers after work before driving to collect his son.

Debbie Lance testified that she and James Lance were married until 1996 and still live together. She stated that she was fired from her job three weeks after Mr. Lance's accident due to the time she had to take off to care for Mr. Lance. She stated that she had been earning $350 per week and she was re-employed six months after

being fired. Upon cross-examination, she admitted that she passed the accident spot that day and did not recall seeing any potholes in the pavement.

The Claimants rested their case on June 9, 1998. On August 3, 1998, Claimants filed a motion to bar the Respondent's expert witness, Dr. Daniel Brown, from testifying. On September 3, Respondents responded to the motion to bar the testimony of Dr. Daniel Brown. According to the February 27, 1998, expert witness disclosure, Dr. Brown was to testify as to "Claimant's alcohol consumption at the time of the accident." Also on September 3, 1998, Respondents filed a motion for leave to file an amended answer with affirmative defenses, alleging that Mr. Lance's own conduct was the proximate cause of the accident on April 17, 1989. The motion alleged that Mr. Lance failed to keep a proper lookout on the roadway, failed to apply the brakes of his motorcycle, and was operating the motorcycle while under the influence of alcohol.

A second hearing was held on October 28, 1998. At this hearing, over the objection of the Claimants, the Commissioner heard testimony from Dr. Daniel Brown, an expert witness for the Respondent who is a forensic toxicologist. Again, over objection from Claimants, the Commissioner entered into evidence Dr. Brown's curriculum vitae and an opinion letter from Dr. Brown to the State of Illinois. The Commissioner also allowed the amended answer to be filed.

Dr. Brown testified that Mr. Lance had a serum blood alcohol concentration of 0.101 at the time of the accident. Dr. Brown arrived at this conclusion by considering the time interval between the time of the accident (11:12 p.m.) and the serum blood alcohol test at 3:30 a.m. (0.043). Then, Dr. Brown determined from the scientific

literature the amount of time alcohol takes to metabolize to reach the 0.043 level. Accordingly, Dr. Brown testified that Mr. Lance had at least five 12-ounce domestic beers, or about five ounces of 100-proof liquor. Mr. Brown further testified that if Mr. Lance had only had two 12-ounce beers before the accident, his blood alcohol concentration would have been zero.

The State of Illinois rested its case on October 28, 1998. The State of Illinois filed a motion for a directed finding after October 28, 1998, and the Claimants responded to the motion on January 8, 1999.

## The Law

Several issues were raised in both hearings held before the Commissioner such as the admissibility of Dr. Daniel Brown's testimony on James Lance's alcohol consumption on the day of the accident, the affirmative defenses in the amended complaint, and the motion for a directed finding at the conclusion of the October 28, 1998 hearing. However, even if all of these issues raised fall in favor of the Claimants, the Claimants have failed to prove by a preponderance of the evidence that the State of Illinois had actual or constructive notice of the alleged pothole.

The State of Illinois is not an insurer of the conditions of the highways under its control, but it does have a duty to the public to use reasonable care in maintaining its roadways. (*Preikshat v. State* (1985), 37 Ill. Ct. Cl. 29.) Accordingly, for the Claimants to prevail, they must prove that the State of Illinois had breached that duty of reasonable care, and that the breach of that duty was the proximate cause of injury to the Claimant. (*N.W. v. Amalgamated Trust and Savings Bank* (1990), 196 Ill. App. 3d 1066, 554 N.E.2d 629, 663, 143 Ill. Dec. 694.) Further, in

order for the Claimants to recover, they must prove by a preponderance of the evidence that the State had actual or constructive notice of the dangerous condition on the roadway. *Feldman v. State* (1984), 36 Ill. Ct. Cl. 158.

The State does have a duty to maintain its roadways and highways in a reasonably safe condition, and a Claimant must prove by a preponderance of the evidence that there was a breach of that duty. (*Preikshat v. State* (1985), 37 Ill. Ct. Cl. 29.) Here the parties do not dispute that the State had a duty to maintain the roads and highways in a reasonably safe condition. However, the parties disagree on whether there was a breach of that duty.

To prevail, the Claimants must prove by a preponderance of the evidence that the State had actual or constructive notice of the dangerous condition on the roadway. (*Feldman v. State* (1984), 36 Ill. Ct. Cl. 158.) The mere fact that a defective condition existed is not, by itself, sufficient to constitute an act of negligence on the part of the State. *Cotner v. State* (1989), 40 Ill. Ct. Cl. 70.

The Claimant introduced photographs of the roadway that were taken after the accident; however, neither the pleadings or the record contain any exact date indicating when these photographs were taken. The closest approximation of the date on which the photographs were taken is a month after the accident. Also, the Claimant's expert, Mark Ezra, did not offer any opinion as to how long the alleged pothole had been on the roadway or whether the State should have been aware of the potholes on the roadway. Lastly, although the State did not mention the Illinois Department of Transportation departmental report at hearing, the report reveals that the State had no actual or constructive knowledge of the alleged potholes on the portion of the roadway in question.

The Claimants also alleged that James Lance's injuries were a direct and proximate result of the placement of the guardrail just off the roadway. To prevail, the Claimants must prove by a preponderance of the evidence that the State was negligent in the design or maintenance of the guardrail, that the State knew or should have known of the dangerous condition, and that failure to implement stricter standards or otherwise maintain the guardrail was a proximate cause of the Claimant's injuries. (*Evans v. State* (1988), 40 Ill. Ct. Cl. 140; *Kramer v. State* (1990), 42 Ill. Ct. Cl. 23.) The Claimants' expert, Mark Ezra, testified that he could not find any rules, laws, or statutes of any state to indicate the guardrail was not properly installed. The Claimants' expert has no experience in roadway design, construction or maintenance.

The State amended its answer to add affirmative defenses that James Lance's own actions were the proximate cause of his injuries. The Claimants contend these affirmative defenses were untimely and should be barred from consideration. Also, the Claimants argued that the testimony of Dr. Daniel Brown should be barred, as the disclosure by the State on what Dr. Brown would testify about was inadequate. A court has broad discretion to allow the addition of new defenses on just and reasonable terms at any time before final judgment so long as other parties do not sustain undue prejudice or surprise. (735 ILCS 5/2—616.) The Illinois Supreme Court upheld a trial court's decision to allow a physician to amend his answer late in the trial to include an affirmative defense of contributory negligence. (*Hobart v. Shin* (1999), 705 N.E.2d 907, 235 Ill. Dec. 724, 185 Ill. 2d 283.) The Court noted that the issue of the Claimant's responsibility was sufficiently prominent in the pleadings and discovery to allow the plaintiff ample opportunity to rebut a defense of contributory negligence. *Id.*

Here, the pleadings and discovery are sufficient to put the Claimants on notice that the issue of James Lance's own responsibility may be raised in trial. Further, the State adequately disclosed that Dr. Daniel Brown would testify as to James Lance's alcohol consumption on the date of the accident, and this disclosure was sufficient to apprise the Claimants that the issue of alcohol consumption and intoxication would be raised at the trial. In brief, the Commissioner recommended that the Claimants were adequately informed of the nature of the affirmative defense to allow the Claimants to conduct discovery and rebut the defense at trial, and we affirm his decision.

We do not consider the issue of the affirmative defenses in the State's amended answer or the issue of Dr. Brown's testimony as dispositive of this case, as the Claimants have not proved that the State was on notice of a dangerous condition on the roadway. Regardless, section 2—1116 of the Code of Civil Procedure provides that a plaintiff whose contributory negligence is more than 50 percent of the proximate cause of the injury or damage for which recovery is sought shall be barred from recovering any damages. (735 ILCS 5/2—1116.) Based upon the testimony of Dr. Brown concerning the amount of alcohol consumed by James Lance prior to the accident and the fact that James Lance had driven the roadway at least four times on the day of the accident, it is the opinion of the Court that James Lance was more than 50 percent responsible for his own injuries in failing to exercise reasonable caution and care for his own safety.

It is hereby ordered that Claimants' claims are denied and dismissed with prejudice.