Brant, J.
Alleging that his consumption of at least two gum balls resulted in burns and other mouth injuries, David S. Ide (“Ide”) filed this suit for negligence and breach of the implied warranty of merchantability against The Foreign Candy Co., Inc. (“Foreign Candy”), the sole American importer and distributor of the Ecuadorian product, and against Dollar Tree Stores, Inc. (“Dollar Tree”), a national chain which owned the retail store in which the gum balls were purchased.
At the jury trial of this matter, Ide testified that his wife purchased a single package of ‘The Original Mega Warheads Sour Gum” balls (“Warheads”) at the Dollar Tree Store in Ashland. Warheads are individually wrapped gum balls sold in packages of various sizes. Each Warhead contains the following warning on the front of the wrapper: “CAUTION: First 50 seconds are EXTREMELY INTENSE! Hang in there!” There is a “Mega Mouth Reader” on the back of the wrapper, which is headed “How Brave are you?” The meter reads “Stay with it” at 5 seconds; “Now you can feel the power” at 15 seconds; ‘We know you are suffering” at 25 seconds; “Victory is almost yours” at 35 seconds and ‘You made it! You’re a Mega Warheads Hero” at 50 seconds. Below the list of ingredients, the following warning appears in a black box to highlight it: “[ejating multiple pieces within a short time period may cause a temporary irritation to sensitive tongues and mouths."
Ide testified that he had often consumed Warheads in the past, and sometimes put most of a package into his mouth at one time. He also testified that on the day in question, June 7, 2001, he put at least two, and possibly four, Warheads into his mouth; and immediately noticed that the Warheads tasted different from those he had previously consumed because they were extremely tart.
Ide spat out the Warheads, and went to a hospital emergency room where he was treated for a sore throat. Ide had been seen at the same hospital for a sore throat three days earlier. The next day, Ide was given pain killing medicine by a Dr. H. William Fegley at a walk-in medical center in Framingham. Finally, a week later, Ide went to see Dr. Richard V. Grentzenberg (“Grentzenberg”), an ear, nose and throat specialist. Grentzenberg diagnosed and treated Ide for mucositis, an inflammation of the mucous membrane. Grentzenberg also questioned whether Ide had suffered from a chemical burn. Ide had been a smoker for many years. Three months later, Grentzenberg treated Ide for glossitis, an inflammation of the tongue.
*166 In September, 2002, Grentzenberg’s assistant noted in Ide’s medical record that the doctor could not relate the diagnosis of mucositis to an injury. Subsequently, Grentzenberg prepared two letters on the same date about Ide’s case addressed to Ide’s attorney. The first letter concluded that Grentzenberg could not “say with certainty” that the Warheads had caused injury to Ide. When Ide’s attorney questioned this letter, Grentzenberg modified his opinion by stating in the second letter that it was “more probable than not” that the Warheads had caused Ide’s injuries.
Grentzenberg’s testimony at trial, both as Ide’s expert witness and his treating physician, was equally equivocal. Grentzenberg stated that he couldn't say directly whether any injuries Ide may have suffered resulted from the Warheads, or merely from an allergic reaction. He further testified that he was unaware that Ide had been treated for a sore throat three days before consuming the Warheads, or that Ide had seen Dr. Fegley the day after. Grentzenberg also acknowledged that there can be many causes of mucositis.
When Ide rested, both Foreign Candy and Dollar Tree moved for directed verdicts. The trial judge deferred decision on the motions until all evidence had been introduced. Foreign Candy presented testimony from a company officer that Foreign Candy had sold 73 million Warheads without any similar complaints. A Dollar Tree corporate officer testified that the purchasing of Warheads was done centrally for the entire company, and that the store in Ashland merely displayed and sold product provided to it.
At the close of all the evidence, the judge revisited the defendants' directed verdict motions. The judge allowed Dollar Tree’s motion on the basis that it was merely the seller of Warheads; and that Foreign Candy, as the importer standing in the shoes of the manufacturer, was the only defendant whose culpability could be considered by the jury. The judge denied Foreign Candy’s motion.
As to Foreign Candy, Ide requested jury instructions on both res ipsa loquitur and on the liability of non-manufacturing distributors and retailers. The judge declined to give any instruction on res ipsa loquitur. As to the liability of non-manufacturing distributors, the judge rejected Ide’s proposed instruction and instead instructed the jury that a manufacturer has to know, and be in a position to know, that a product was inherently dangerous or had the potential to become dangerous. The judge further instructed the jury that a distributor of a product stands in place of a manufacturer and is held to the same standards.
During their deliberations, the jury sent a question to the judge asking whether it was the jury’s “job to determine whether the distributor stands in the place of the manufacturer.” Ide’s counsel repeated his request for the instruction he had sought earlier. The judge declined again to use that instruction, and instructed the jury that “a supplier of another manufacturer’s product who puts out the product as its own assumes the role of the manufacturer and has the same duty of care as the manufacturer would have.” He also instructed the jury that the “supplier of the product has a duty to the foreseeable user to exercise reasonable care to inform the user of the dangerous condition or of facts which make it likely to be dangerous.”
The jury returned a verdict for Foreign Candy, and Ide moved for a new trial as to both defendants. Based on the parties’ oral argument and his review of the recording of the entire trial, the judge issued a written decision denying Ide’s new trial motion. While he agreed with Ide that Dollar Tree’s directed verdict motion should not have been allowed on the ground that its presence was unnecessary because Foreign Candy, the supplier, was a defendant in the case, the judge concluded that the evidence was insufficient to have permitted the case to have gone to the jury against either defendant. The judge further ruled that the there was no evidence of negligence by either defendant, the evidence of causation was extremely weak, and the warning on the Warheads’ label was adequate. Ide appealed.
*167 1. There is no merit in Ide’s initial argument that the judge erred in refusing to give a res ipsa loquitur jury instruction. The doctrine of res ipsa loquitur
permits a trier of fact to draw an inference of negligence in the absence of a finding of a specific cause of the occurrence when an accident is of the kind that does not ordinarily happen unless the defendant was negligent in some respect and other responsible causes including conduct of the plaintiff are sufficiently eliminated by the evidence.
Enrich v. Windmere Corp., 416 Mass. 83, 88 (1993). The jury must be able to determine that the mere occurrence of an injury indicates negligence as the cause. Id. “Simply stated, the doctrine of res ipsa loquitur does no more than recognize that negligence and causation, like other facts, may be established by circumstantial evidence.” Hemenway v. Shaw’s Supermarket, Inc., 1998 Mass. App. Div. 97, 98.
The evidence was far too equivocal in this case for a res ipsa loquitur instruction to have been appropriate. There was no evidence indicating that there was any defect in the Warheads ingested by Ide, nor was there any clear evidence that the Warheads had caused Ide’s injuries. Rather, Ide’s evidence indicated a number of causal possibilities, including Ide’s prior existing condition, his ingesting too many Warheads at once, or an allergic reaction. In the absence of clear testimony, expert or otherwise, pointing to Warheads as a cause, Ide’s evidence was inadequate. Id. at 98. “Res ipsa loquitur is no substitute for the lack of evidence of the defendant’s negligence.” Botteri v. Massachusetts Bay Transp. Auth., 1996 Mass. App. Div. 178, 179. The judge properly declined to give an instruction on res ipsa loquitur.
2. With respect to Ide’s second request for an instruction on the liability of a non-manufacturing supplier, the issue is whether the jury was properly instructed on the potential liability of Foreign Candy as the distributor of Warheads, and the elements of the liability Ide sought to prove. Higgins v. Delta Elevator Serv. Corp., 45 Mass. App. Ct. 643, 647 (1998). The judge instructed the jury that Foreign Candy, as the distributor of Warheads manufactured in Ecuador, stood in the shoes of the manufacturer and had the same obligations toward potential consumers. That instruction was a fair statement of the law as to both negligence and breach of warranty. Thornhill v. Carpenter-Morton Co., 220 Mass. 593, 597-598 (1915). The jury was in a position to deliberate and decide the question whether Foreign Candy knew or should have known that Warheads were inherently or potentially dangerous. No new trial was required.
3. Ide also challenges the judge’s determination on Ide’s new trial motion that the evidence was insufficient to have permitted the case to go to the jury at all. In deciding a motion for a directed verdict, the trial judge must determine whether the plaintiff’s evidence, viewed in the light most favorable to the plaintiff and with all reasonable inferences drawn in his favor, could meet the plaintiff’s burden of proof. Cherick Distributors, Inc. v. Polar Corp., 41 Mass. App. Ct. 125, 126 (1996). Where it is a close case, the better practice is to deny the motion for a directed verdict and submit the case to the jury. Smith v. Ariens Co., 375 Mass. 620, 627 (1978).
As indicated, Ide’s fundamental problem was his inability to prove causation. See Johnson v. Kanavos, 296 Mass. 373, 375-376 (1937). His expert, Dr. Grentzen-berg, offered little assistance on that issue. Grentzenberg’s first letter stated that he couldn't make a causal link at all. While his second letter and his trial testimony suggested that there might have been some relationship between Ide’s ingestion of the Warheads and Ide’s injuries, Grentzenberg’s statements fell short of identifying anything inherently or specifically wrong with the Warheads so as to have permitted a finding of liability. It was Ide’s burden to show that the Warheads, and not his own physical condition, possible disregard of the label warning, or other factors were responsible for his injuries. In the absence of evidence of a “greater *168 likelihood” that the Warheads caused the injuries claimed, Ide failed to satisfy his burden of proof. Miller v. W. T. Grant Co., 302 Mass. 429, 431 (1939).
Ide argues that because the Warheads tasted overly tart to him and seemed different from those he had eaten on other occasions, his case should be judged by the standards applicable to cases alleging injury from food which looked or smelled bad. Even in such cases, however, expert medical testimony was required to link that allegedly bad food with the plaintiffs injuries and to permit the case to go forward. Denaro v. 99 Restaurant, Inc., 2002 Mass. App. Div. 195, 196-197; McSweeney v. McDonald’s Corp., 1991 Mass. App. Div. 197, 198. There was, thus, no error in the trial judge’s ruling that a directed verdict should have been allowed on Ide’s negligence claim at the close of the plaintiff’s case or at the conclusion of all the evidence.
4. Ide also sought recovery against both Foreign Candy and Dollar Tree for their alleged breach of the implied warranty of merchantability. Ide’s recovery on that claim required proof that the Warheads he consumed were not “reasonably suitable for the ordinary uses for which goods of that kind and description are sold [,]” that the defect existed at the time of sale, and that the defect was the proximate cause of Ide’s injuries. Mead v. Coca Cola Bottling Co., 329 Mass. 440, 442 (1952). ‘Where an article of food or drink, intended for human consumption, is sold in a sealed container, an implied warranty is imposed on the manufacturer that the article was ñt for that purpose....” Warren v. Coca-Cola Bottling Co. of Chicago, 166 Ill. App. 3d 566, 572 (1988).
Once again, Ide’s evidence was insufficient to establish that there was anything wrong with the Warheads. The gum balls were never tested; and the remaining evidence was entirely speculative. “[T]he mere fact that injury occurs in consumption of the product does not alone raise a presumption, or otherwise create an inference” of a breach of warranty. Id. at 572-573. Finally, the evidence supported the trial court’s conclusion that the package label warnings of a potential reaction to Warheads, particularly after consuming more than one at a time, were sufficient.
Judgment affirmed.
So ordered.