(No. 54481.—

ELIZA PHILLIPS, Adm'r, Appellee, v. THE CHICAGO HOUSING AUTHORITY, Appellant.

*Opinion filed February 2, 1982.*

Omer, Wasserman & Moore, Ltd., of Chicago (Norton Wasserman and H. Elisabeth Huber, of counsel), for appellant.

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Ed-

ward J. McCambridge and Mary F. Stafford, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

This appeal is from a negligence action brought in the circuit court of Cook County for the wrongful death and personal injuries of plaintiff's decedent, a resident of a housing project operated by the defendant, the Chicago Housing Authority (CHA). The circuit court struck the complaint for failure to state a cause of action and also three successive amended complaints. Upon striking the third amended complaint, the court dismissed the case with prejudice. The appellate court concluded that a cause of action was stated and reversed and remanded for further proceedings. (91 Ill. App. 3d 544.) We granted the CHA's petition for leave to appeal.

The plaintiff's third amended complaint alleged:

"1. The plaintiff's decedent, DEBRA PHILLIPS, was a minor who resided at 1119 North Cleveland Street, which is located in the Cabrini Green Housing Project in Chicago.

2. Cabrini Green is a public housing development of approximately 78 buildings, owned, operated, maintained and controlled by the CHA.

3. At the time of Debra's death and for a long time prior thereto numerous incidents of crimes of extreme violence had taken place on the premises in question in the possession and control of the defendant. The offenses included criminal homicides, aggravated assaults, and rapes of adults and minors. The crimes were committed against tenants, their families, and their invitees and licensees. In particular, crimes of rape of female minors had taken place in the areas which later were secured or locked by the defendant as described hereafter in paragraph 5.

4. At all times concerned, the defendant knew or by exercise of due care and caution should have

known of the existence of these crimes.

5. At some time prior to April 2, 1977, the CHA closed and locked off certain floors of the aforementioned building to prevent criminals, of whom they knew or in the exercise of due care and caution should have known, from entering these floors to conduct criminal activities and to keep the premises safe for the tenants of the building.

6. On April 2, 1977, Debra was abducted by persons unknown and violently assaulted and raped and taken to and beaten on one of the allegedly secured floors and was thrown out a window on that floor, causing her death.

7. At that time and place the CHA negligently and carelessly committed one or more of the following acts:

(a) kept the keys to the closed-off floors in an area or place that was known to or accessible to the general public or to those criminals that the CHA knew or should have known came on the premises;

(b) left the keys to the elevator allowing travel to the closed off floors accessible to the general public and to those criminals that the CHA knew or should have known came on the premises;

(c) failed to inspect the elevator to determine if it had been prevented from being stopped at the closed-off floors;

(d) failed to inspect the doors to the closed-off area to determine if the locks were working so as to bar access to the closed-off areas;

(e) failed to inspect the elevator to determine whether the elevator lock, preventing it from traveling to the closed-off floors, was working;

(f) failed to warn the tenants that the doors to the closed-off areas were in fact unsecured and were accessible to the public and to those criminals who the CHA knew or in the exercise of reasonable care should have been known came on to the

premises;

(g) failed to warn the tenants that the elevator was not locked and closed off to the floors which were being remodeled and [that such floors were] accessible to the general public and to those criminals who the CHA knew or should have known came on to the premises;

(h) failed to provide police protection or security guards in the building notwithstanding the fact that the CHA had provided police protection by furnishing security guards for some of the buildings in the Cabrini Green Project.

8. As a direct and proximate result of one or more of the negligent acts of the CHA, Debra was abducted on the premises of 1119 North Cleveland, taken to the closed-off area of the building, assaulted, beaten, raped and thrown out of a window.

The appellate court held that the plaintiff's third amended complaint did state a cause of action. We agree. It will not be necessary to consider the correctness of all of the grounds given by the appellate court for its holding.

Our conclusion that the complaint did state a cause of action rests upon the holding in *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204.

In *Pippin,* this court held that the CHA owed no duty, either by statute or under the common law, to protect its tenants from criminal acts. The court recognized, however, that as a general principle liability is imposed upon a landlord who voluntarily undertakes to provide security measures, but performs the undertaking negligently, if the negligence is the proximate cause of injury to the plaintiff. (78 Ill. 2d 204, 209, citing *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 74 (insurer held responsible in tort for personal injuries suffered as a result of the insurer's negligent performance of a voluntary inspection of the premises where the injuries occurred).)

The duty of care imposed upon the landlord under that

analysis was held to be limited to the extent of the landlord's undertaking. Because the CHA's undertaking in *Pippin* was to hire a security firm to provide guard services for its building, this court concluded that the CHA could be held liable only for negligence in hiring. The Civil Practice Act states that pleadings should be liberally construed (Ill. Rev. Stat. 1979, ch. 110, par. 33(3)), and that no pleading is bad in substance if it contains sufficient information reasonably to inform the opposing party of the nature of the claim that the party is called upon to meet (Ill. Rev. Stat. 1979, ch. 110, par. 42(2)). Although the complaint is something short of a model, we agree with the appellate court's conclusion that it can be read to allege that the CHA voluntarily undertook to close off and secure certain floors to prevent the commission of crimes thereon and to safeguard tenants and that the CHA performed that undertaking negligently.

The complaint alleges that the CHA's negligent acts were the proximate cause of the abduction, rape, and death of the decedent. The CHA contends, citing *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, that it cannot be held liable merely for a negligent performance that proximately causes injury; but that, rather, it can be held liable only if the plaintiff alleges that the CHA's conduct actually increased the risks and dangers to the plaintiff's decedent. In other words, the CHA says that the landlord is not to be judged liable because it undertook a security measure that failed through its negligence, but is to be held liable only if the landlord's actions left the tenants in a worse position than they were in before the landlord undertook the security measure. The complaint contains no allegation of an increase in danger, and no inference of an increase in danger can reasonably be drawn from it. Under the *Pippin* holding, however, no such allegation is necessary.

The decision in *Pippin* rests upon the principle in tort expressed in *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69. There an insurance company was held liable for

injuries to employees of the company's insured when a construction hoist fell. The insurer had voluntarily undertaken to inspect the premises, and the plaintiff alleged that the insurer had negligently conducted those inspections, proximately causing the injuries. This court in *Nelson* dismissed a contention similar to the one advanced by the CHA, stating:

> " 'One who gratuitously renders services to another, *** is subject to liability for bodily harm caused to the other by his failure, while so doing, to exercise such competence and skill as he possesses' [Restatement of Torts sec. 323(1) (1934)].
>
> Our Appellate Court, in considering [this principle], concluded that it was 'properly applicable only in situations involving active negligence, or misfeasance,' (39 Ill. App. 2d at 129,) an earlier portion of its opinion indicating that it equated the terms 'active negligence' and 'misfeasance' as meaning the 'creation of a risk, or danger,' and its belief that defendant here could not be liable for a gratuitous undertaking unless it was guilty of negligence which 'caused the hoist to fall.' (39 Ill. App. 2d at 122.) In this we believe the court was plainly wrong. The language that a volunteer is liable for failure to use such competence and skill as he possesses does not admit to a conclusion that the only duty of the volunteer is to refrain from positive acts of negligence. Moreover, in those cases, subsequently discussed, where insurers have incurred liability as the result of gratuitous inspections of machines and equipment, liability rested upon a breach of the duty to make the inspections with due care, not upon acts which 'created' dangers or defects, or which caused the occurrence by which injury was received. [Citation.] *** [P]laintiffs, to support their actions, had only to show (1) that defendant undertook to make safety inspections and to render safety engineering services under circumstances which created a duty on defendant, owed to plaintiffs, to perform its under-

takings with due care, and (2) that the gratuitous undertakings were negligently performed, such negligence resulting proximately in plaintiffs' deaths and injuries." 31 Ill. 2d 69, 74-75.

The situation in *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, is distinguishable from the one here. This court held in *Cross* that the duty of care imposed upon a landlord in a voluntary undertaking to provide guard service includes a duty not to create a condition of increased danger to tenants. *Cross*, however, was simply an application of the reasoning of *Pippin* to a complaint in which the plaintiff alleged that the landlord's conduct had created increased dangers to him. Nowhere in *Cross* is it said that the duty of care recognized in *Nelson* and *Pippin* was simply a duty not to create a condition of increased danger.

The appellate court was correct in holding that the plaintiff's allegation that the CHA was negligent in failing to provide guard services in the building did not state a cause of action. The duty of care considered in *Pippin* extends only to the landlord's undertaking. Here, the landlord undertook only to secure certain floors. The duty of care arising was not a general duty to police. We have explained the inapplicability of our decision in *Cross*.

For the reasons given, the judgment of the appellate court reversing the circuit court and remanding the cause to the circuit court for further proceedings is affirmed.

*Judgment affirmed.*