B.C. *et al.*, Plaintiffs-Appellants, v. J.C. PENNEY COMPANY, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—88—0453

Opinion filed September 18, 1990.—Rehearing denied November 16, 1990.

6

Donald A. Shapiro and David A. Statham, both of Donald A. Shapiro, Ltd., of Chicago, for appellants.

Kiesler & Berman, of Chicago (Edward L. Cooper, of counsel), for appellee Maggio Construction Co.

Keevers & Hittle, of Chicago (Dawn A. Himley, of counsel), for other appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff B.C. was abducted from the parking lot of the River Oaks Shopping Center in Calumet City and taken to a nearby construction site within the center, where she was beaten and raped. She filed a complaint charging defendants with negligence, after which the trial court granted motions to dismiss filed by defendants-appellees J.C. Penney Company, Inc., J.C. Penney Properties, Inc. (collectively,

Penney), and Maggio Construction Company (Maggio). We affirm.

B.C. was shopping in a store in the River Oaks Shopping Center at approximately 8 p.m. on March 8, 1985. On returning to her car in the parking lot, she was threatened by a man with a knife, who forced her to drive to a construction site within the shopping center. Defendant J.C. Penney Properties, Inc., had leased the property from the shopping center, and defendant J.C. Penney, Inc., was the owner of the store under construction pursuant to a contract with defendant Maggio Construction Company. A wire fence surrounded the construction area, but the gate had been left unlocked. Plaintiff was forced inside and assaulted.

Plaintiff filed an original and four amended complaints. Count I of the fourth amended complaint charges all defendants with negligence in failing to maintain proper security in the parking lot and at the construction site. The complaint further alleges that defendants knew or should have known of a history of prior violent attacks in the shopping center parking lot, and that defendants had negligently failed to lock the gate of the construction site and to provide adequate lighting at the site. Count III contends plaintiff was a third-party beneficiary to the construction contract between Maggio and Penney, which required that Maggio take measures to properly secure the construction site. Counts II and IV are loss of consortium claims asserted by plaintiff's husband.[1]

On June 18, 1987, the trial court granted Penney's motion for judgment on the pleadings and Maggio's motion to dismiss, basing her ruling on the absence of foreseeability, and making no reference to plaintiff's third-party beneficiary argument. The order included a Supreme Court Rule 304(a) finding (107 Ill. 2d R. 304(a)). Plaintiff's motions for reconsideration and for leave to file a fifth amended complaint were denied on January 8, 1988. This appeal was taken from the orders of June 18, 1987, and January 8, 1988.

## I.

### THE CASE AS TO PENNEY

■ Our standard of review is well defined and well established: in ruling on the propriety of a grant of judgment on the pleadings, all well-pleaded facts in the complaint are assumed to be true. (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552-53, 359 N.E.2d

---

[1]Although both B.C. and her husband C.C. are plaintiffs in this action, we shall, for obvious reasons, make reference throughout this opinion only to B.C. as plaintiff.

113, 117.) Further, the motion "draws all fair inferences from the respondent's pleadings[,] and contemplates that the moving party is entitled to judgment as a matter of law." *Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, 927, 427 N.E.2d 317, 319.

▪ ▪ Under Illinois law, the general rule is that one does not owe a duty to protect another from the criminal acts of third parties unless the plaintiff and defendant are in one of a small number of special relationships set forth in section 314A of the Restatement (Second) of Torts (1965): common carrier-passenger, innkeeper-guest, possessor of land-invitee, and custodian-person in lawful custody. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358; *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538; *Zimring v. Wendrow* (1985), 137 Ill. App. 3d 847, 485 N.E.2d 478; *Hosein v. Checker Taxi Co.* (1981), 95 Ill. App. 3d 150, 419 N.E.2d 568.) We find that no special relationship exists between plaintiff and Penney in this case. Plaintiff argues the fact that she was a business invitee with respect to the shopping center means she must also be treated as Penney's invitee, but this does not logically follow, nor does plaintiff cite any authority to support such a theory. On the contrary, a business invitee has been defined as one who enters the land of another by express or implied invitation, in connection with the other's business or activities, with resulting mutual benefit to the other and the invitee. (*Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 474 N.E.2d 920.) None of these factors is present in this case.

Plaintiff contends in the alternative that Illinois decisions have deviated from a strict application of the special relationship rule, and argues that all persons are under a duty to refrain from any action which facilitates a foreseeable criminal act. (*Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433, *appeal denied* (1987), 113 Ill. 2d 573, 505 N.E.2d 352; *Stribling v. Chicago Housing Authority* (1975), 34 Ill. App. 3d 551, 340 N.E.2d 47.) In *Duncavage*, the complaint alleged that a criminal's entry of an assaulted tenant's apartment was facilitated by the landlord's failure to properly light the exit area of the building, to remove a ladder stored by the landlord in the yard near the tenant's window, and to properly maintain a lock on the window used to gain access to the apartment. A prior unrelated burglary had occurred in the same apartment under the same circumstances, a fact alleged to have been known to the landlord. The court discussed the policy underpinnings of the duty concept (147 Ill. App. 3d at 96, 497 N.E.2d at 437), and noted that imposing a duty of care on these facts would not be unduly burdensome (147 Ill. App. 3d at

97-98, 497 N.E.2d at 439). While the court determined that a duty arose from a landlord's responsibility to maintain the common areas and from certain requirements of local building code ordinances, its holding that a duty could also be based on facilitating a reasonably foreseeable criminal act (147 Ill. App. 3d at 97-99, 497 N.E.2d at 438-39), although not strictly necessary to the opinion, would seem to depart from the special relationship rule.

A similar conclusion was reached in *Stribling*, where the plaintiffs' apartment was burglarized on three occasions by persons breaking through the wall of an adjacent vacant apartment. Plaintiffs complained of the first two incidents to the landlord, but it failed to seal off the vacant premises. The court imposed a duty to protect against the second and third burglaries based solely on the foreseeability of these crimes, again without reference to the special relationship rule.

However, we must reject this analysis in light of the supreme court's most recent third-party criminal assault case, which involved the issue of the defendant landlord's duty to protect employees of its commercial tenant from criminal attacks. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 531 N.E.2d 1358.) The court underscored the continued vigor of the special relationship rule, observing that it has "repeatedly held that the simple relationship between a landlord and a tenant, or a landlord and those on the premises with the tenant's consent, is not a 'special' one imposing a duty to protect against the criminal acts of others." (125 Ill. 2d at 216, 531 N.E.2d at 1364.) Plaintiffs in *Rowe* avoided the strictures of the special relationship rule only because they successfully argued that the landlord had negligently performed a voluntary undertaking to ensure that outstanding master keys were properly secured and accounted for. (125 Ill. 2d at 221-23, 531 N.E.2d at 1367-68.) Plaintiff argues the applicability of the voluntary undertaking theory with respect to the claim she asserts against Maggio, as will be seen in section IIA of this opinion, but she does not advance it in connection with the case she pleads against Penney.

Although the *Rowe* court noted the broad-based policy considerations involved in determining the existence of a legal duty (125 Ill. 2d at 227-28, 531 N.E.2d at 1369-70), and cited both *Duncavage* and *Stribling* with approval (125 Ill. 2d at 223, 531 N.E.2d at 1368), we do not deem it the determinative announcement of the demise of the special relationship rule that plaintiff urges us to recognize. See also *Petrauskas v. Wexenthaller Realty Management, Inc.* (1989), 186 Ill. App. 3d 820, 829, 542 N.E.2d 902, 908, *appeal denied* (1990), 128 Ill. 2d 671, 548 N.E.2d 1077 ("To impose a duty in this case would serve

to greatly expand the scope of a landlord's duty almost to the point of abolishing the general rule that a landlord has no duty to protect his tenants from the criminal acts of third persons").

Moreover, even assuming that a policy-oriented duty analysis can override the special relationship rule in certain circumstances as suggested by *Stribling* and *Duncavage*, prior criminal activity in those cases had occurred on the defendant's property, thus enhancing foreseeability, an important consideration in finding the existence of a legal duty. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526, 513 N.E.2d 387, 396, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077; M. Polelle & B. Ottley, Illinois Tort Law 397 (1985).) In contrast, the complaint in this case alleges prior criminal acts occurring only in the shopping center parking lot, thus justifying retention of the case in the circuit court against defendant owners of the center, but we fail to apprehend how the same duty can be logically extended to apply to Penney and its contractor without imposing an intolerable burden on these defendants and all other persons similarly situated, and without expanding the concept of foreseeability well beyond its last frontier. *Stribling* and *Duncavage* are therefore distinguishable and would not sustain plaintiff's position even if we applied the analysis of these decisions.

Plaintiff's final attempt to obviate the rigors of the special relationship rule is predicated on the contention that the Calumet City Building Code imposes a duty on those constructing new buildings to properly secure the construction site. However, we need not address this issue on appeal since plaintiff failed to raise it before the trial court. *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 473 N.E.2d 588.

Accordingly, we hold that the trial judge here properly held as a matter of law that Penney owed plaintiff no duty of care on the facts of this case.

## II.

### THE CASE AS TO MAGGIO

### A.

We next address plaintiff's contention that Maggio breached a duty to exercise reasonable care. Our analysis is similar to that applied to plaintiff's claims against Penney, and here, too, we conclude that the trial court did not err in its dismissal of Maggio.

■ Maggio's motion to dismiss the fourth amended complaint was filed pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). Although the motion challenged primarily the legal sufficiency of the complaint and should consequently have been filed pursuant to section 2—615(a) of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(a); *Bescor, Inc. v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 65, 66, 446 N.E.2d 1209, 1211; *Moreno v. Joe Perillo Pontiac, Inc.* (1983), 112 Ill. App. 3d 670, 445 N.E.2d 1184), we decline to permit that circumstance to inure to the benefit of plaintiff because Maggio's invocation of an inapt motion has not prejudiced her case. (Compare *Downers Grove Associates v. Red Robin International, Inc.* (1986), 151 Ill. App. 3d 310, 502 N.E.2d 1053 (prejudice not demonstrated), with *Eddings v. Dundee Township Highway Commissioner* (1985), 135 Ill. App. 3d 190, 478 N.E.2d 888 (prejudice shown).) Accordingly, we shall treat the motion as a section 2—615 matter, and again accept all well-pleaded facts of the complaint and all reasonable inferences from them as true. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 499, 520 N.E.2d 37, 38.

All of the arguments we have addressed above in connection with the operation of the special relationship rule in plaintiff's claim against Penney, she raises also as to Maggio, but we find them to be of no more persuasive a resonance as to the one defendant than they were to the other. However, plaintiff advances the additional contention that Maggio voluntarily undertook to provide proper security measures at the construction site and was therefore required to exercise reasonable care in performing this undertaking. (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596; see generally *Figueroa v. Evangelical Covenant Church* (7th Cir. 1989), 879 F.2d 1427.) This duty was allegedly breached when Maggio failed to lock the gate on the evening of March 8, 1985, and by Maggio's failure to provide adequate lighting on the site.

■ Under Illinois law, an assumed duty can arise in two distinct contexts. (*Pippin*, 78 Ill. 2d 204, 399 N.E.2d 596.) The first is the voluntary assumption of a duty as stated in the Restatement of Torts section 323(1) (1934):

> "One who gratuitously renders services to another, otherwise than by taking charge of him when helpless, is subject to liability for bodily harm caused to the other by his failure, while so doing, to exercise with reasonable care such competence and skill as he possesses."

(See, *e.g., Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d

122, 431 N.E.2d 1038; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.) Thus, in *Nelson*, an insurance company that performed a number of gratuitous inspections of construction equipment owned by its insured was held to owe a duty of reasonable care to employees of the insured and to employees of subcontractors hired by the insured who were injured after an inspection failed to uncover an equipment defect.

Second, Illinois has also adopted section 324A of the Restatement (Second) of Torts (1965), which involves the situation where one party agrees to perform services for another which inure to the benefit of a third party:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
>   (a) his failure to exercise reasonable care increases the risk of such harm, or
>
>   (b) he has undertaken to perform a duty owed by the other to the third person, or
>
>   (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

See, *e.g., Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 493 N.E.2d 1022.

The choice of one or the other of these two bases of liability can in some cases be a critical consideration because section 324A obviously imposes additional requirements not found under the *Nelson* analysis. In the case at bar, plaintiff has indiscriminately cited both lines of decisions, although her brief gives primary emphasis and devotes extended discussion to cases or portions of cases applying the *Nelson* rule. (See *Phillips*, 89 Ill. 2d 122, 431 N.E.2d 1038; *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 317, 412 N.E.2d 472, 474-75.) We are not convinced that this choice is the correct one, in view of the fact that Maggio was acting pursuant to its contractual agreement with Penney, rather than directly for the benefit of persons such as plaintiff. See *Figueroa*, 879 F.2d at 1433-35.

■ In any event, this distinction is not relevant here, because we do not believe an assumed duty exists under either analysis. The scope of an assumed duty under *Nelson* is limited by the extent of the undertaking and the agreement of the parties. (*Pippin*, 78 Ill. 2d at 209-10, 399 N.E.2d at 599; see generally *Figueroa*, 879 F.2d at 1437.) For example, the hiring of a security service by an employer does not

indicate that the employer undertook to protect employees from criminal assaults by outsiders. (*York v. Modine Manufacturing Co.* (1982), 110 Ill. App. 3d 235, 442 N.E.2d 282.) We can see no reason why this extent-of-the-undertaking limitation should not similarly apply where the promise of undertaking is made for the protection of a third party, thus falling within the scope of section 324A. Accord *Homer v. Pabst Brewing Co.* (7th Cir. 1986), 806 F.2d 119, 123 (applying Illinois law); *Santillo v. Chambersburg Engineering Co.* (E.D. Pa. 1985), 603 F. Supp. 211, 213, *aff'd* (3d Cir. 1986), 802 F.2d 448.

■ The assumed duty claimed to exist here goes beyond the agreement of the parties and exceeds the scope of the undertaking. Plaintiff relies on paragraph 9.2 of the contract between Penney and Maggio, which states in pertinent part:

"9.2 SAFETY OF PERSONS AND PROPERTY

9.2.1 Contractor shall take whatever precautions for the safety of, and shall provide whatever protection as may be necessary to prevent damage, injury or loss to:

(a) employees and other Persons engaged in the Work or who may be affected thereby;

\* \* \*

(c) any part of the Site or property adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities, not designated for removal, relocation or replacement in the course of construction; including but not limited to:

\* \* \*

(iv) providing all necessary guards, barricades, railings, lights, warning signs and similar protective devices."

Paragraph 9.2.1(c)(iv) clearly refers to the providing of guards and barricades for the purpose of protecting the site itself and adjacent property. And although paragraph 9.2.1(a) addresses the protection of "Persons engaged in the Work or who may be affected thereby," we deem it to be intolerably procrustean to stretch such general language to include a duty to protect persons transported involuntarily onto the site and criminally assaulted.

For this reason, and for the reasons set out in section I of this opinion, we affirm the trial judge's ruling that Maggio did not owe plaintiff a duty of care.

### B.

Plaintiff also claims that the trial judge erred in rejecting her argument that she was a third-party beneficiary to the contract between

Maggio and Penney, and that Maggio had breached a contractual duty imposed by paragraph 9.2.1 of the agreement, which we have set forth above. We note that this third-party liability theory is a distinct cause of action from plaintiff's assumed duty tort analysis, and that failure to establish an assumed duty does not necessarily preclude her contractual claim. See, *e.g., Radosevic v. Virginia Intermont College* (W.D. Va. 1987), 651 F. Supp. 1037, 1040 n.7; *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St. 3d 36, 521 N.E.2d 780.

■■ In addressing these contentions, we note that although the issue was briefed and argued below, the trial judge never specifically addressed this matter in her ruling from the bench, and the written judgment order merely states that defendants' motions were granted. We therefore do not have the benefit of the judge's reasons for her implicit denial of plaintiff's contract claim. However, a reviewing court can sustain the decision of the trial court based on any grounds found in the record. *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148, 478 N.E.2d 384, 389.

■■ ■ A third party acquires no rights to damages arising from the breach of a contract entered into by others unless the agreed-to provision at issue was intentionally included for the direct benefit of the third party. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 421 N.E.2d 182; *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498; *Wheeling Trust & Savings Bank v. Tremco, Inc.* (1987), 153 Ill. App. 3d 136, 505 N.E.2d 1045.) This intent "must affirmatively appear from the language of the instrument when properly interpreted and construed." (*Parrett*, 346 Ill. at 257-58, 178 N.E. at 501.) It is not necessary that the contract specifically name a third-party beneficiary if it adequately defines a class of individual beneficiaries. (*Altevogt*, 85 Ill. 2d at 55, 421 N.E.2d at 187.) However, there is a strong presumption that the parties to a contract have not acted for the benefit of anyone other than themselves, and this presumption can be overcome only by language " 'so strong as to amount practically to an express declaration.' " *People ex rel. Hartigan v. Community Hospital* (1989), 189 Ill. App. 3d 206, 218, 545 N.E.2d 226, 233, quoting *Metro East Sanitary District v. Village of Sauget* (1985), 131 Ill. App. 3d 653, 658, 475 N.E.2d 1327; see also 17 Am. Jur. 2d *Contracts* §304, at 730 (1964).

■■ In this case, the language of paragraph 9.2.1(a) is far from an "express declaration" that Maggio intended to be bound by contract to protect third persons brought forcibly onto the construction site from criminal attacks. While the agreement does refer to precautions to protect "other Persons engaged in the Work or who may be

affected thereby," this language is hardly enough to overcome the presumption against plaintiff's third-party beneficiary theory. Further, it is worth comparing the wording in the instant case with that encountered in *Baker v. S.A. Healy Co.* (1939), 302 Ill. App. 634, 24 N.E.2d 228, where plaintiffs relied on a contract between the Sanitary District of Chicago and a corporation hired to construct a sewer. The contract contained a number of provisions specifically stating that the contractor agreed to repair or rebuild damaged property at its own expense, thus enabling the plaintiff property owners to assert claims as third-party beneficiaries. 302 Ill. App. at 654-55, 24 N.E.2d at 238.

We conclude that plaintiff has failed to demonstrate that she was intended to be a beneficiary to the contract; accordingly, we hold that the trial judge properly dismissed plaintiff's third-party beneficiary claim against Maggio.

### III

Finally, we address plaintiff's contention that the trial court erred in denying her motion to file a fifth amended complaint. Neither the order denying the motion nor the transcript of the hearing indicates on what ground the motion was denied. At any rate, we find that the trial judge acted well within her discretion in denying the motion.

The denial of a motion to file an amended complaint must be affirmed unless plaintiff can demonstrate an abuse of discretion. (*People ex rel. Hamer v. Jones* (1968), 39 Ill. 2d 360, 235 N.E.2d 589; *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 193 N.E.2d 833.) "Among the factors to be considered in deciding that discretion was properly exercised is whether the proposed amendment would cure the defective pleading; whether it could cause prejudice or surprise to other parties; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings could be identified." *Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 107, 479 N.E.2d 1052, 1055; accord *Lakeside Villas Homeowners Association, Inc. v. Zale Construction Co.* (1986), 145 Ill. App. 3d 505, 495 N.E.2d 1100.

In this case, the proferred fifth amended complaint would still fail to state a claim upon which relief may be granted. It is slightly more specific in that instead of alleging "a history of previous violence in said parking lot," it refers to "two rapes and numerous assaults, armed robberies and other violent crimes," all in the lot. This change, along with a number of other minor changes, is not a material one

and does not rectify the defects or supply the omissions discussed above. Indeed, plaintiff's proposed fifth amended complaint seems to present an even less convincing case for recovery than does her fourth amended complaint, since it omits Maggio altogether from its negligence count. Moreover, a party does not have a right to file unlimited amendments of a complaint. (*Latex Glove Co. v. Gruen* (1986), 146 Ill. App. 3d 868, 497 N.E.2d 466.) Five attempts at the portals of a trial, taking into consideration all of the factors and circumstances discussed above, plus what plaintiff has to offer in a sixth assay, are quite enough.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

DiVITO, P.J., and HARTMAN, J., concur.